UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KYLE G., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. C20-5099-BAT <br><br> **ORDER REVERSING THE COMMISSIONER'S DECISION** |

Plaintiff seeks review of the ALJ's decision finding his disability, which began on January 26, 2011, ended on September 1, 2015. He contends the ALJ erred in (1) finding a significant improvement in his mental functioning, (2) failing to address an examining doctor's opinion, (3) discounting lay statements, and (4) failing to address a disability hearing officer's decision finding him limited to performing 1-2-step tasks away from the public. Dkt. 12 at 1. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently 32 years old, has a high school diploma, and has worked as a package deliverer and landscaper. Tr. 207, 216-17. In a November 2011 State agency determination, Plaintiff was found disabled beginning on January 26, 2011. Tr. 66-77. In

ORDER REVERSING THE COMMISSIONER'S DECISION - 1

September 2015, Plaintiff was found not disabled as of September 1, 2015, and a disability hearing officer upheld that decision upon reconsideration. Tr. 78, 84-86, 102-04.  Plaintiff requested a hearing, which the ALJ held in May 2018. Tr. 32-65.  In December 2018, the ALJ found Plaintiff's disability ended as of September 1, 2015. Tr. 15-25.  As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the eight-step evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity through the date of the decision.

**Steps two and six:** At the time of the comparison point decision ("CPD"), November 29, 2011, Plaintiff had the following severe impairments: adjustment disorder, organic mental disorder, and substance addiction disorder.  He did not develop any additional impairments since that time and his adjustment disorder became no longer medically determinable after the CPD.

Since September 1, 2015, Plaintiff's impairments did not meet or equal the requirements of a listed impairment.[2]

**Step three:** Medical improvement occurred on September 1, 2015.

Since September 1, 2015, Plaintiff has had the residual functional capacity ("RFC") to perform light work, with additional limitations: he can frequently climb ramps and stairs, and can never climb ladders, ropes, or scaffolds.  He can frequently balance, stoop, kneel, crouch, and crawl.  He can occasionally stoop.  He can tolerate frequent exposure to excessive heights and vibrations.  He cannot tolerate exposure to hazards, heights, and dangerous moving machinery.  He can never operate a motorized vehicle for work purposes.

**Step four:** Plaintiff's medical improvement is related to his ability to work because it resulted in an increase in his RFC, and thus there is no need to consider step five (whether an exception to medical improvement applies).

**Step seven:** Plaintiff has no past relevant work.

---

[1] 20 C.F.R. § 404.1594.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

> **Step eight:** Since September 1, 2015, he has been able to perform other jobs that exist in significant numbers in the national economy.  Thus, Plaintiff's disability ended on September 1, 2015, and he has not become disabled again since that date.

Tr. 15-25.

## DISCUSSION

**A.     Severe Impairments**

Plaintiff argues the ALJ erred in finding his adjustment disorder, which was identified as a severe impairment in the CPD, was not medically determinable during the adjudicated period. Dkt. 12 at 6-7.  The ALJ noted an adjustment disorder had been diagnosed in 2011, during an evaluation wherein Plaintiff was suspected to be intoxicated.  Tr. 18 (referencing Tr. 715-16). Plaintiff was evaluated again in 2015, by an examiner, Lezlie Pickett, Ph.D., who reviewed the 2011 evaluation report, and Plaintiff admitted he was intoxicated at the time of Dr. Pickett's evaluation as well.  *See* Tr. 725.  At that time, Plaintiff was diagnosed with alcohol use disorder, cannabis use disorder, and polysubstance use disorder, but Dr. Pickett found Plaintiff did not have any mood or thought disorder.  Tr. 728.  The ALJ found because Plaintiff was suspected to be intoxicated during the 2011 evaluation wherein he was diagnosed with an adjustment disorder, and Dr. Pickett's subsequent evaluation revealed no evidence of a mood or thought disorder, the 2011 adjustment disorder diagnosis was not supported in the record.  Tr. 18.

In light of this medical evidence and the ALJ's reasonable interpretation of that evidence, the ALJ's finding Plaintiff's adjustment disorder was not medically determinable during the adjudicated period is supported by substantial evidence.  Although Plaintiff argues the ALJ erred in relying on Dr. Pickett's examination as evidence undermining the adjustment disorder diagnosis, because Dr. Pickett focused on cognitive testing, Plaintiff overlooks that Dr. Pickett also addressed the lack of report or evidence of symptoms related to a mood disorder: "[Plaintiff]

did not evidence or report the number, severity, chronicity, frequency or combination of mental health symptoms that would have merited a formal clinical diagnosis of any major mood or thought disorder." Tr. 728. This portion of Dr. Pickett's opinion supports the ALJ's interpretation of the evidence and Plaintiff has not established error in this part of the ALJ's decision.

Plaintiff also notes he was examined by Ronald Nielsen, M.D., in April 2016, and that this physician opined Plaintiff would have physical limitations that were not included in the ALJ's RFC assessment. Dkt. 12 at 7. Specifically, Plaintiff points to Dr. Nielsen's opinion that if Plaintiff were seated he would need to stand and stretch his back every 30-60 minutes. *See* Tr. 759. The ALJ did not include this limitation in the RFC assessment, but it is also not clear this limitation is inconsistent with the RFC assessment because light jobs would not necessarily involve sitting for extended periods of time and would not necessarily be incompatible with a brief stretching break. Nothing in Dr. Nielsen's opinion suggests Plaintiff would require extended breaks, as posited by Plaintiff. Dkt. 12 at 7. Because Plaintiff has not shown Dr. Nielsen's opinion is inconsistent with the ALJ's RFC assessment, Plaintiff has not shown harmful error in the ALJ's assessment of Plaintiff's physical impairments. *See Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).

Plaintiff also notes the ALJ's RFC assessment is internally inconsistent in two ways: the ALJ found Plaintiff capable of stooping both frequently and occasionally, and indicated Plaintiff can have "at most frequent exposure to excessive heights" but also "no exposure" to "heights." Tr. 19. These errors are harmless because none of the jobs identified at step five require any stooping or work at "high exposed places." *See* Dictionary of Occupational Titles ("DOT") 222.687-022, 1991 WL 672133; DOT 209.587-034, 1991 WL 671802; DOT 222.587-038, 1991

1  WL 672123. Because this case must be remanded on other grounds, however, as explained

2  *infra*, the ALJ should clarify the RFC on remand.

3  **B.    Nicholas Zendler, D.O.**

4  Plaintiff was seen by Dr. Zendler for evaluation of his posttraumatic epilepsy in

5  December 2017. Tr. 773-81. Dr. Zendler noted at that time, Plaintiff had not been taking any

6  antiseizure medication for a year, and was experiencing 1-2 seizures per month. Tr. 773. Dr.

7  Zendler prescribed a new medication to address the seizures and perhaps improve his headaches.

8  Tr. 781. The ALJ did not discuss this treatment note, and Plaintiff suggests this was error.

9  Plaintiff argues the ALJ erred in failing to address Dr. Zendler's note, as evidenced by

10  the ALJ's failure to include seizure precautions in the hypothetical posed to the vocational expert

11  ("VE"), because Plaintiff experienced frequent seizures "even on medication." Dkt. 12 at 8.

12  Plaintiff is mistaken: the ALJ explicitly discussed Dr. Zendler's note. Tr. 21. Furthermore, Dr.

13  Zendler only described seizures that occurred 1-2 times per month when Plaintiff was *not*

14  medicated. And more importantly, even though Plaintiff was apparently performing some work

15  at the time of Dr. Zendler's evaluation (Tr. 779), Dr. Zendler did not indicate that any workplace

16  seizure precautions were required, other than not driving, and the ALJ included this limitation in

17  the RFC and VE hypothetical. *See* Tr. 19, 21, 58-59, 781. Because the ALJ's RFC assessment

18  and VE hypothetical are consistent with Dr. Zendler's treatment note, Plaintiff has not shown the

19  ALJ harmfully erred in failing to discuss Dr. Zendler's note.

20  **C.    Lay Statements**

21  Plaintiff's family members submitted statements describing his symptoms and

22  limitations. Tr. 339, 342, 347. The ALJ summarized the statements and found the mental

23  limitations the lay witnesses described were inconsistent with the opinion of the examining

psychologist, and inconsistent with Plaintiff's activities (such as riding dirt bikes, playing with dogs, swimming, and gambling at casinos). Tr. 22-23. The ALJ also noted the lay witnesses were not acceptable medical sources and did not cite to objective medical evidence. *Id.*

The ALJ must give german reasons in order to reject the testimony of lay witnesses. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness."). The ALJ's last reason to discount the lay statements is not germane because lay statements are not unreliable simply because they are provided without medical expertise. *See Diedrich v. Berryhill*, 874 F.3d 634, 640-41 (9th Cir. 2017). Furthermore, it is not clear that any of Plaintiff's activities as cited by the ALJ contradict the limitations described by the lay witnesses, even assuming Plaintiff engaged in these activities during the adjudicated period.

But the ALJ's other reason is germane. Dr. Pickett found Plaintiff did not report or display symptoms of a mood or thought disorder, which contradicts the lay witnesses' description of such symptoms, and the ALJ did not err in discounting the lay statements based on that discrepancy. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").

**D.     Disability Hearing Officer's Opinion**

As described *supra*, the State agency reviewed the record to find initially Plaintiff's disability ended as of September 1, 2015. Tr. 84-85. Plaintiff requested reconsideration and a disability hearing was scheduled, but Plaintiff did not appear. Tr. 88-90, 92-94. The disability hearing officer nonetheless reviewed the record and opined Plaintiff's current RFC included a restriction to performing 1-2-step tasks away from the public. Tr. 98, 100. Although the ALJ noted a disability hearing officer upheld the initial determination that Plaintiff's disability had

ended (Tr. 15), the ALJ's decision does not discuss the content of the disability hearing officer's decision or the limitations indicated by the disability hearing officer.

Plaintiff argues because the ALJ did not discuss or provide any reason to discount the hearing officer's opinion, the ALJ erred in failing to include the restriction to 1-2-step tasks away from the public in the RFC assessment and VE hypothetical. Dkt. 12 at 12. The Commissioner misunderstands Plaintiff's argument, and argues the ALJ was not required to adopt the favorable State agency decisions finding Plaintiff disabled in 2011 because the ALJ "crafted a different RFC based on the recent medical evidence and medical opinion[s] from Drs. Pickett, Hurley, and Nielsen." Dkt. 13 at 10. But Plaintiff does not contend that the ALJ should have included limitations from the State agency's favorable 2011 decision; Plaintiff has pointed to limitations described by the disability hearing officer in 2015 after reviewing the recent medical evidence. *See* Tr. 98, 100. When counsel asked the VE whether Plaintiff could perform the step-five jobs if he was limited to performing 1-2-step tasks, the VE testified that Plaintiff could not perform those jobs. Tr. 63.

Although the disability hearing officer decision does not constitute a medical opinion, the disability hearing officer's decision is nonetheless significant, probative evidence that is inconsistent with the ALJ's RFC assessment that should have been discussed by the ALJ. There may be persuasive arguments as to why the ALJ's failure to discuss the decision is harmless, but the Commissioner failed to provide such arguments to the Court and the Court will not manufacture such arguments on the Commissioner's behalf.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

ORDER REVERSING THE COMMISSIONER'S DECISION - 7

On remand, the ALJ should address the limitations identified in the disability hearing officer's decision and either credit them or provide legally sufficient reasons to discount them, develop the record as appropriate, clarify the RFC as to stooping and exposure to heights, and reconsider any other aspects of the decision as necessary.

DATED this 4th day of August, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

ORDER REVERSING THE COMMISSIONER'S DECISION - 8